UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| STERLING AUTOMOTIVE GROUP, INC. d/b/a STERLING PREMIUM SELECT and ARTHUR C. LEBLANC, JR. | : | CIVIL ACTION NO. |
| VS. | : | JUDGE |
| EDGARDO RAMAYO | : | MAGISTRATE JUDGE |

## **COMPLAINT**

NOW INTO COURT, through undersigned counsel, come Plaintiffs, STERLING AUTOMOTIVE GROUP, INC., and ARTHUR C. LEBLANC, JR., who respectfully represent as follows:

**Nature of the Case**

1.

Plaintiffs seek the recovery of monetary damages, penalties and injunctive relief arising from the Defendant's violation of the Anti-Cybersquatting Consumer Protection Act (the "ACPA"), 15 U.S.C. § 1125(d), and related state law claims for trade name dilution due to Defendant's unlawful registration and use of a domain name that is identical to Plaintiff's registered trade name, defamation, violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401, *et seq*., and breach of contract.

**The Parties**

2.

The Plaintiffs herein are (a) Sterling Automotive Group, Inc. ("Sterling"), a corporation organized under the laws of the State of Louisiana, whose principal place of business and domicile are in Lafayette Parish, Louisiana, d/b/a Sterling Premium Select, and (b) Arthur C. LeBlanc, Jr., an individual of the age of majority, domiciled in Lafayette Parish, Louisiana, who is President of Sterling.

3.

Made Defendant herein is Edgardo Ramayo ("Defendant"), a former Sterling employee who is a person of the full age of majority domiciled in Lafayette Parish, Louisiana, who, on information and belief, is the proper defendant of this suit. As will be explained below, Defendant is a former employee of Sterling who was eventually terminated for misconduct.

**Jurisdiction and Venue**

4.

This Honorable Court has subject matter jurisdiction of this civil action under 28 U.S.C. § 1331 and 15 U.S.C. § 1121. The Court has supplemental jurisdiction over the state law claims as ancillary claims pursuant to 28 U.S.C. § 1367.

5.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## Factual Background and General Allegations

6.

Sterling owns and operates multiple new and used car dealerships in Acadia, Jefferson Davis, Lafayette and St. Landry Parishes, Louisiana. Sterling has conducted this business since its organization in 1995. Sterling sells vehicles to customers in Louisiana and other states at its several dealerships, online, and through its affiliated auction company.

7.

On March 27, 2015, Sterling registered the trade name "Sterling Premium Select" with the Louisiana Secretary of State. Sterling d/b/a Sterling Premium Select owns and operates two used car dealerships in Lafayette Parish, Louisiana, known as "Sterling Premium Select."

8.

Sterling has invested substantial time, money and effort into creating and branding its used vehicle dealerships bearing the name "Sterling Premium Select." Sterling has also spent substantial time, money and effort in establishing an internet presence through its several websites. Sterling owns, maintains and utilizes several domain names including www.saveatsterling.com, www.sterlingpremiumusedcars.com, and www.sterlingbroussard.com.

9.

Each of Sterling's websites contains its logo and a title tag, best described as a snippet of text used to describe the web page's content. For example, the title tag for www.sterlingpremiumusedcars.com is "Sterling Premium Select | Used Dealership in

Lafayette, LA." Sterling considers its "web presence" to be a valuable and integral part of its marketing strategy.

10.

In May, 2020, Sterling sought to obtain the domain name "www.sterlingpremiumselect.com," when Sterling learned that, on information and belief, the domain name had already been purchased and acquired by Defendant.

11.

Defendant, without the knowledge, consent or permission of Sterling, acquired, registered and uses the domain name www.sterlingpremiumselect.com under a fictitious registrant name, Domains By Proxy, LLC, an affiliate of GoDaddy, in order to conceal Defendant's true identity as the actual owner of the domain.

12.

Defendant listed the infringing domain name (www.sterlingpremiumselect.com) for sale on GoDaddy, a leading website domain registration company, for a stated purchase price of $99,999.00.

13.

Defendant linked the infringing www.sterlingpremiumselect.com website to the www.sterlingpremiumusedcars.com domain owned and maintained by Sterling. Thus, an internet user seeking to visit www.sterlingpremiumselect.com is automatically and unknowingly redirected to www.sterlingpremiumusedcars.com (Sterling's proprietary website) with one exception. Defendant changed the title tag on

www.sterlingpremiumselect.com to read "[Expletive deleted] [1] our Employees. Art LeBlanc." Under these circumstances, the offending website serves absolutely no legitimate or commercial purpose whatsoever than for the intentional purpose and objective of disparagement, harassment or impugning Sterling and its President, and to steer potential automobile purchasers away from Sterling.

**First Cause of Action:**
**Violation of the Anti-Cybersquatting Consumer Protection Act**

14.

The ACPA, enacted in 1999, was intended to address exactly the kind of extortionate behavior in which Defendant has (and continues to) engage; that section of the Lanham Act to which the ACPA was appended, 15 U.S.C.§1125(d), bears the sub-heading "Cyberpiracy prevention." If there is an apt term for Defendant's conduct in respect of the domain name which it wrongfully registered herein, it is "cyberpiracy."

15.

Sterling Premium Select is a distinctive trade name that was owned, registered and in use by Sterling years before Defendant registered the domain name www.sterlingpremiumselect.com.

16.

The domain name www.sterlingpremiumselect.com is indistinguishable from Sterling's registered trade name "Sterling Premium Select." On information and belief, Defendant's registration and use the domain name www.sterlingpremiumselect.com is in

---

[1] More precisely, the omitted expletive, as used by Defendant on the infringing domain, is the proverbial "F word."

bad faith and for the sole and deliberate purpose of profiting from the domain name by selling it for financial gain and with intent to tarnish, disparage, and impugn Sterling's registered trade name in violation of the ACPA, 15 U.S.C. § 1125(d).

17.

Upon information and belief, Defendant registered the domain name www.sterlingpremiumselect.com, and used it as part of a scheme or endeavor to injure Sterling's business by posting a vulgar, offensive and profane title tag and making it appear as though the title tag was authored, sponsored, affiliated or endorsed by Sterling.

18.

Defendant has no intellectual property rights or legitimate interests with respect to the domain name www.sterlingpremiumselect.com.

19.

Defendant is not making any legitimate non-commercial or fair use of the domain name www.sterlingpremiumselect.com.

20.

Defendant's registration and use of the www.sterlingpremiumselect.com domain name constitutes cybersquatting and cyberpiracy in violation of 15 USA §1125(d), entitling Sterling to relief.

21.

Sterling is entitled to a Court order requiring Defendant to transfer the domain name www.sterlingpremiumselect.com to Sterling pursuant to 15 U.S.C. § 1125(d)(1)(C).

22.

By reason of Defendant's acts alleged herein, unless restrained and enjoined, including a mandatory injunction transferring ownership, possession and control of the www.sterlingpremiumselect.com domain name to Sterling, Defendant's acts will cause Sterling irreparable harm and damage for which there is no adequate remedy at law.

23.

Sterling's remedy at law is not adequate to compensate it for the injuries inflicted by Defendant. It is impossible to know the number of internet users or "visitors" who may have visited the website with the infringing domain name and were subsequently diverted from Sterling's business because of confusion or damage to reputation as a result. Accordingly, Sterling is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

24.

By reason of Defendant's acts as alleged herein, Sterling is entitled to recover Defendant's profits, Sterling's actual damages enhanced up to three times their amount, or statutory damages under 15 U.S.C. §1117(d), on election by Sterling, in the amount up to one hundred thousand dollars ($100,000.00) or of such lesser amount (but not less than $1,000.00) as the Court considers just, and costs of this action.

25.

This is an exceptional case entitling Sterling to an award of attorney's fees under 15 U.S.C. §1117(a).

## Second Cause of Action: Violation of the Lanham Act

26.

Defendant's conduct, as described above, constitutes false and misleading designation of origin and false and misleading representations in violation of 15 U.S.C. §1125(a).

27.

Defendant's use of Sterling's registered trade name is likely to cause confusion, or to cause mistake, or to deceive the relevant public that the infringing domain name and the vulgar, offensive and profane title tag were authorized, sponsored or approved or affiliated with Sterling.

28.

Defendant's conduct was willful and with knowledge of Sterling's prior rights, and in bad faith, entitled Sterling to Defendant's profits, any actual damages, treble damages, costs and reasonable attorney's fees.

## Third Cause of Action: Dilution Under Louisiana Law

29.

Defendant's conduct, as described above, has injured or is likely to injury the business reputation and/or dilute the distinctive quality of the trade name "Sterling Premium Select."

30.

Unless enjoined, Defendant's aforesaid conduct will cause Sterling further irreparable harm. Pursuant to the Louisiana Anti-Dilution Act, La. R.S. 51:223.1, Sterling is entitled to injunctive relief prohibiting Defendant from using Sterling's trade name, all

profits of Defendant derived from and/or all damages suffered by reason of Defendant's illegal use of Sterling's trade name.

## Fourth Cause of Action: Defamation

31.

Defendant's repugnant title tag constitutes a malicious, false and defamatory statement which was intentionally published to third parties and has resulted in injury to Mr. LeBlanc's reputation and good name, thereby entitling him to damages.

## Fifth Cause of Action:
## Violation of Louisiana Unfair Trade Practices
## and Consumer Protection Law, La. R.S. 51:1401, *et seq*.

32.

There is no conceivable economic or commercial value to Defendant of the subject domain name other than to seek an unwarranted profit from its unauthorized appropriation and sale, and to cause economic and reputational harm to Plaintiffs.

33.

Thus, the actions of Defendant as described herein constitute unfair trade practices, fraud, misrepresentation, deception or other unethical conduct, and are vulgar, obscene, immoral, unethical, oppressive, unscrupulous, or substantially injurious.

34.

As a result of this violation, Defendant is liable to Plaintiffs for damages and attorney's fees.

## Sixth Cause of Action: Breach of Contract

35.

After he was terminated by Sterling, Defendant made a claim for unpaid wages and penalties.

36.

At or around the time that Defendant made a claim for unpaid wages, he posted disparaging comments about Sterling on his Facebook page using the following hashtags: #wagetheft, #stopwagetheft, #saveatsterling, #sterlingautomotive, #sterlingautomotive group, #notafraid, and #sterling. Defendant also "tagged" or attempted to tag local media outlets and the U.S. Department of Labor and encouraged other Facebook users to "Like and Share!" The disparaging post was subsequently removed from Facebook by Defendant.

37.

Sterling and Defendant amicably resolved such claims by paying a sum of money to Defendant, who executed (on advice of counsel) a Release and Compromise Agreement dated January 16, 2020.

38.

The Release and Compromise Agreement executed by Defendant contained a non-disparagement provision reading, as follows:

> Settlor specifically covenants and agrees not to, directly or indirectly, make or cause to be made to anyone, any statement, publicly or privately, criticizing, defaming or disparaging

the Released Party[2] or commenting in a negative fashion on the operations, products sold or business reputation of the Released Party, whether by oral, visual, electronic, written or other means of expression or communication, including, but not limited to, any website, social media, forum, chatroom, blog, news or media outlet or other method of expression, publication or communication. The Parties acknowledge and agree that this provision extends to statements, written, published or verbal, made to anyone, including but not limited to news media, competitors, vendors, employees (both past and present) of the Released Party. The Parties agree that this provision is a substantial and material covenant contained in this Agreement and that breach of this provision will cause substantial harm to them and may be properly enforced through equitable relief, including but not limited to, injunctive relief.

39.

The actions of Defendant as set forth herein constitute a clear violation of the non-disparagement provision contained in the Release and Compromise Agreement. As a consequence of this violation—characterized as "substantial and material," a mandatory injunction should issue to require Defendant to transfer, at no cost or expense to Sterling, the full rights to the domain name www.sterlingpremiumselect.com; to cease and desist any further or future actions of the nature described herein, and to pay to Sterling the consideration or settlement sum for the execution of the Release and Compromise Agreement which Defendant has breached.

---

[2] The term "Released Party" is defined in the January 16, 2020 Release and Compromise Agreement as "Sterling and all of its officers, directors, owners. . ."

**Amicable Demand Made**

40.

Although not required by applicable law, and in an attempt to avoid litigation with the resultant burden on the resources of this Honorable Court, Plaintiffs, through undersigned counsel, directed correspondence to Defendant, properly addressed to his residence, demanding that Defendant (a) cease and desist in the publication of the vile and profane title tag, (b) remove the link to Sterling's proprietary website, and (c) transfer to Sterling the registration for the infringing domain name. The letter was sent by United States Postal Service certified mail, return receipt requested. Upon receipt of the return postal receipt, it was discovered that Defendant, rather than signing his legal name, signed the receipt "Covid 19," thus denying Plaintiffs the ability to confirm with absolute certitude that the letter was in fact received by Defendant. This fact is mentioned to demonstrate the cavalier attitude of Defendant to the issues raised herein.

WHEREFORE, Plaintiffs seek a judgment in their favor against Defendant, granting Sterling the following relief:

1. A judgment in Plaintiffs' favor finding that Defendant has violated the rights of Sterling in the "Sterling Premium Select" trade name in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), the Lanham Act, 15 U.S.C. § 1125(a), the Louisiana Anti-Dilution Act, La. R.S. 51:223.1, and the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401, *et seq.*;

2. A judgment in Plaintiffs' favor ordering and compelling Defendant to transfer and assign the domain name www.sterlingpremiumselect.com to Sterling, at Defendant's cost, pursuant to 15 U.S.C. 1125(d)(1)(C);

3. A judgment in Plaintiffs' favor that Defendant be preliminarily and permanently enjoined from the following:

   i. Registering, attempting to register, using, attempting to use, selling, or attempting to sell in any manner, any domain name(s) containing the word "Sterling" or "Sterling Premium Select" or any variation thereof, including common misspellings, or any trade name, mark or designation confusingly similar thereto;

   ii. Publishing any defamatory, slanderous, and/or libelous statements or writings, whether on social media or otherwise, concerning Mr. LeBlanc and/or Sterling;

4. A judgment ordering Defendant to account to Plaintiffs for and disgorge any profits that Defendant may have derived by reason of unlawful acts complained of above;

5. A judgment in Plaintiffs' favor finding that Defendant is liable for defamation and breach of contract;

6. A judgment ordering Defendant to pay the following:

   i. Damages enhanced up to three times their amount, or statutory damages under 15 U.S.C. §1117(d), on election by Plaintiffs, in the amount up to one hundred thousand dollars ($100,000.00) or of such lesser amount (but not less than $1,000.00) as the Court considers just, and costs of this action;

   ii. Reasonable attorney's fees, legal interest and costs of this action under 15 U.S.C. §1117 and La. R.S. 51:1401, *et seq*.; and

   iii. The consideration or settlement sum for the execution of the Release and Compromise Agreement which Defendant has breached;

7. A judgment ordering Defendant to file with this Court and serve upon Plaintiffs a report in writing, under oath, setting forth in detail the manner and form in which

Defendant has complied with the terms of any injunction entered by this Court; and

8. A judgment awarding Plaintiffs all such other relief as may be appropriate.

By Attorneys,

OTTINGER HEBERT, L.L.C.

/s/Valerie V. Guidry
Patrick S. Ottinger, T.A. (Bar Roll No. 8727)
Valerie V. Guidry (Bar Roll No. 30780)
1313 West Pinhook Road (70503)
Post Office Drawer 52606
Lafayette, Louisiana 70505-2606
Phone: (337) 232-2606
Fax: (337) 232-9867
Email: psottinger@ohllc.com
vvguidry@ohllc.com

and

DURIO, McGOFFIN, STAGG & ACKERMANN, P.C.

/s/ William W. Stagg
William W. Stagg (Bar. No. 01613)
220 Heymann Boulevard (70503)
Post Office Box 51308
Lafayette, Louisiana 70505-1308
Phone: (337) 233-0300
Fax: (337) 233-0694
Email: bill@dmsfirm.com

Attorneys for Sterling Automotive Group, Inc. and Arthur C. LeBlanc, Jr.