UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| STERLING AUTOMOTIVE GROUP INC ET AL | CASE NO. 6:20-CV-00809 |
| VERSUS | JUDGE ROBERT R. SUMMERHAYS |
| EDGARDO RAMAYO | MAGISTRATE JUDGE HANNA |

## MEMORANDUM RULING

The present matter before the court is a Motion for Default Judgment [ECF No. 9] filed by plaintiffs Sterling Automotive Group, Inc. and Arthur C. Leblanc, Jr. ("Plaintiffs"). Plaintiffs seek entry of a default judgement against defendant Edgardo Ramayo ("Ramayo") pursuant to Rule 55(b) of the Federal Rules of Civil Procedure. The Court held an evidentiary hearing on the motion on December 7, 2020. For the reasons stated below, the Court GRANTS the Motion for Default Judgment and enters judgment against Ramayo.

### I.
### FINDINGS OF FACT

1.  Plaintiffs assert federal claims under the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (the "ACPA") and the Lanham Act, 15 U.S.C. § 1125(a), as well as state law claims for tradename dilution, defamation, breach of contract, and violations of the Louisiana Unfair Trade Practices and Consumer Protection Law, LA.R.S.51:1401, et seq. ("LUTPA") Plaintiffs seek compensatory damages, statutory penalties, an order requiring transfer of the domain names at issue, an accounting of profits, attorney's fees and costs, and permanent injunctive relief.

1

2. Sterling owns and operates multiple new and used car dealerships in Acadia, Jefferson Davis, Lafayette, and St. Landry Parishes, Louisiana. Sterling has operated since 1995 and sells vehicles onsite at its dealerships as well as online and through its affiliated auction company. Sterling sells vehicles to customers located in Louisiana and customers who reside in other states.[1]

3. Sterling registered the tradename "Sterling Premium Select" with the Louisiana Secretary of State on March 27, 2015. Sterling uses this tradename in connection with two used car dealerships in Lafayette Parish, Louisiana. Sterling also owns, maintains, and utilizes several internet domain names including www.saveatsterling.com, www.sterlingpremiumusedcars.com, and www.sterlingbroussard.com. Each of Sterling's websites contains its logo and a "title tag." The title tag for the website address www.sterlingpremiumusedcars.com includes Sterling's tradename "Sterling Premium Select."[2]

4. Ramayo is a former Sterling employee who was ultimately terminated for misconduct. After his termination, Ramayo asserted a claim for unpaid wages and penalties. Ramayo also posted disparaging comments about Sterling on his Facebook page using the hashtags #wagetheft, #stopwagetheft, #saveatsterling, #sterlingautmotive, #sterlingautomotive group, #notafraid, and #sterling. Ramayo also attempted to "tag" local media outlets and the U.S. Department of Labor on those disparaging posts.[3]

5. Sterling and Ramayo entered into a Release and Compromise Agreement on January 16, 2020 (the "Release and Compromise"). Pursuant to this agreement, Sterling paid

---

[1] Complaint at ¶ 6.
[2] Complaint at ¶ 8.
[3] Complaint at ¶¶ 35-38.

2

Ramayo $48,500.00. This agreement contains a non-disparagement provision in which Ramayo agreed as follows:

> Settlor Specifically covenants and agrees not to, directly or indirectly, make or cause to be made to anyone, any statement, publicly or privately, criticizing, defaming, or disparaging the Released Party or commenting in a negative fashion on the operations, products sold or business reputation of the Released Party, whether by oral, visual, electronic, written or other means of expression or communication, including, but not limited to, any website, social media, forum, chatroom, blog, news or media outlet or other method of expression, publication or communication. The Parties acknowledge and agree that this provision extends to statements, written, published or verbal, made to anyone, including but not limited to news media, competitors, vendors, employees (both past and present) of the Released Party. The Parties agree that this provision is a substantial and material covenant contained in this Agreement and that breach of this provision will cause substantial harm to them and may be properly enforced through equitable relief, including but not limited to, injunctive relief.[4]

6. Sterling attempted to register the internet domain name "www.sterlingpreiumselect.com" in May 2020. But Sterling was unable to register this domain name because Ramayo had already registered it. Ramayo acquired, registered, and used the www.sterlingpreiumselect.com domain name under a fictitious registrant name, Domains by Proxy, LLC, an affiliate of GoDaddy. Ramayo listed the "www.sterlingpremiumselect.com" domain name for sale on GoDaddy for a purchase price of $99,999.00.[5]

7. Ramayo also "linked" his domain name, www.sterlingpreiumselect.com, to Sterling's domain name, www.sterlingpremiumusedcars.com. With this link, anyone entering Ramayo's domain name would be redirected to Sterling's "Sterling Premium Select" website. However, anyone redirected from Ramayo's domain name would see the vulgar title tag "f___k our Employees. Art LeBlanc." This vulgar title tag was created by Ramayo to defame and damage Sterling and LeBlanc.[6]

---

[4] Complaint at ¶ 38; Hearing Exhibit 2.
[5] Complaint at ¶ 12; Hearing Exhibit 5.
[6] Complaint at ¶ 13; Hearing Exhibit 6.

3

8. Ramayo's actions with respect to the www.sterlingpremiumselect.com domain name occurred after he had entered into the Release and Compromise, and thus violated the agreement's non-disparagement provision.

9. With respect to defamation damages, Sterling and LeBlanc presented the testimony of Dr. Jeffery T. Stewart. Dr. Stewart holds a Doctor of Philosophy in Business Administration-Marketing. He holds the Moody Company/BROSF Endowed Chair in Regional Development and is an Associate Professor in the Department of Marketing at the University of Louisiana at Lafayette. The Court finds that Dr. Stewart is qualified as an expert to opine on the damages incurred by Plaintiffs as a result of Defendant's actions.[7]

10. Dr. Stewart analyzed Sterling's internet presence and online social media reviews following Ramayo's disparaging Facebook posts in January 2020 and his use of the www.sterlingselectpremium.com domain name to disparage Sterling and LeBlanc. Factoring in the number of customers impacted by these reviews and lost sales, Dr. Stewart opined that Sterling was damaged in the amount of $136,546.84 as a result of lost customers.[8]

11. Dr. Stewart opined that Ramayo's Facebook posts and vulgar title tag created confusion in the marketplace and irreparable damage to Sterling's relationship with its customers, employees, and the public. He opined that Ramayo's actions weakened Sterling's brand positioning.[9]

12. Dr. Stewart further opined on the cost to Sterling and LeBlanc to repair their reputations as a result of Ramayo's conduct. Dr. Stewart opined that the cost to reverse the

---

[7] Hearing Testimony of Dr. Stewart.
[8] *Id.*
[9] *Id.*

4

negative publicity generated through Ramayo's Facebook posts, vulgar title tag, and other conduct totals $22,000.00.[10]

13. The Court finds that Dr. Stewart's analysis and conclusions are thorough, credible, and persuasive.

14. Plaintiffs filed the original complaint in this case on June 25, 2020. The summons was issued on June 26, 2020, and the summons was returned executed on June 29, 2020. Ramayo did not answer or otherwise move with respect to the complaint and, on July 22, 2020, the Clerk's entry of default was entered in the docket. Plaintiffs filed their Motion for Default Judgment on August 21, 2020.[11]

15. Following the December 7th hearing, Plaintiffs submitted the Affidavit of Patrick S. Ottinger in support of Plaintiffs' Request for Attorney's Fees and Costs. In his affidavit, Mr. Ottinger testifies that his law firm has charged Plaintiffs $28,954.25 for legal services rendered in connection with the filing and prosecution of this case. These fees include pleading and hearing preparation, legal research, and the fees incurred in connection with the December 7th hearing. In addition, Mr. Ottinger testified that Plaintiffs incurred $811.33 in costs related this case and expert witness fees in the amount of $4,539.05.[12]

## II.
## CONCLUSIONS OF LAW

1. A default occurs when a party against whom a judgment for affirmative relief is sought has "failed to plead or otherwise defend" against a claim within the time allowed by the Federal Rules of Civil Procedure.[13] A default judgment under Rule 55 of the Federal Rules of Civil

---

[10] *Id.*
[11] *See* ECF No. 1.
[12] Affidavit of Patrick S. Ottinger [ECF No. 16].
[13] FED.R.Civ.P. 55(a).

Procedure begins with the ministerial act of the Clerk's office in entering default.[14] After the Clerk's entry of default, the non-defaulting party may move for a default judgment. Under certain circumstances, the Clerk of Court may enter the default judgement.[15] Here, plaintiffs seek damages that are not liquidated, fixed, or otherwise indisputable. Accordingly, Plaintiffs must proceed under Rule 55(b)(2). Entry of a default judgment under Rule 55(b)(2) requires an application to the court and, if necessary, an evidentiary hearing to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

    2.    Granting a default judgment by the court is not automatic. Granting a default judgment is discretionary even if a party has defaulted and the docket reflects the Clerk's entry of default.[16] Courts employ a three-part test in determining whether to grant a default judgment: (1) whether the grant of a default judgment is procedurally warranted; (2) whether there is a sufficient basis in the pleadings for the judgment; and (3) the form of relief, if any, the plaintiff should receive.[17] In determining whether a default judgment is procedurally warranted, the Fifth Circuit has outlined six factors that courts should consider: (1) whether material issues of facts exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would "think itself obliged" to set the default judgment aside on Ramayo's motion.[18]

---

[14] *Id.*
[15] FED.R.Civ.P. 55(b)(1).
[16] *Ganther v. Ingle* 75 F 3d, 207, 209 (5th Cir. 1996).
[17] *United States v. 1998 Freightliner VIN #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).
[18] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

3. The essential elements of an ACPA claim are: (1) the plaintiff's mark is a distinctive or famous mark entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered the domain name with the bad faith intent to profit from it.[19] A trademark is distinctive if it is either inherently distinctive or if it has acquired secondary meaning.[20] If the mark is capable of identifying products or services as coming from a specific source, it is inherently distinctive and secondary meaning is not required.[21]

4. A court may award attorney's fees to a prevailing party under 15 U.S.C. § 1117(a) in exceptional cases involving acts that are malicious, fraudulent, deliberant, or willful.[22]

5. 15 U.S.C. § 1125(d)(1)(C) provides that in "any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."

6. Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), provides that:

Any person who, on or in connection with any goods or services…uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin…which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person…shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

7. To state a Lanham Act claim, a plaintiff must show that the defendant's use of the plaintiff's mark is likely to cause confusion among consumers as to the source, affiliation, or sponsorship of the good or service at issue.

---

[19] 15 U.S.C. § 1125(d)(1)(A); *E. & J. Gallo Winery v. Spiderwebs, LTD*, 286 F.3d 270, 274 (5th Cir. 2002).
[20] *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 854 (1982).
[21] *Teso's, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992).
[22] *Kiva Kitchen & Bath, Inc. v. Capital Distrib., Inc.*, 2009 WL 890591 (5th Cir. 2009).

8. The Louisiana Anti-Dilution Statute, La. R.S. § 51:223.1, provides a cause of action if the plaintiff can establish a "likelihood of injury to business reputation or of a delusion of a distinctive quality of a mark or trademark...unfair competition not withstanding the absence of competition between the parties or in the absence of confusion." It is a more expansive protection of a trademark than an infringement action.[23] The Louisiana Anti-Dilution Statute protects a mark based upon its strength and "such strength can be demonstrated by showing a mark to either be distinctive or to have acquired a secondary meaning."[24]

9. The Louisiana Unfair Trade Practice Act prohibits "unfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce."[25] A trade practice is unfair when it "offends established, public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious."[26] The elements of a cause of action under LUTPA are: (1) an unfair or deceptive trade practice declared unlawful; (2) that impacts a consumer, business competitor, or other person who the statute grants a private right of action; and (3) which has cause ascertainable loss.[27] "Further, federal courts have treated the requirements of LUTPA as mirroring the Lanham Act, which avoids the federal courts having to apply two different analyses to [Lanham Act] and LUTPA claims."[28]

10. A defamation claim under Louisiana law requires the following four elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third

---

[23] *Gulf Coast Bank v. Gulf Coast Bank & Trust Co.*, 652 So. 2d 1306, 1312 (La. 1995).
[24] *Advantage Rent-A-Car, Inc. v. Enterprise Rent-A-Car, Co.*, 238 F.3d 378, 381 (5th Cir. 2001) (quoting *Prudhomme v. Proctor & Gamble, Co.*, 800 F. Supp. 390, 395 (E.D. La. 1992)).
[25] La.R.S. 51:1405(a).
[26] *Levine v. First Nat. Bank of Commerce*, 948 So. 2d 1051, 1065 (La. 2006) (quoting *Roustabouts, Inc. v. Haymer*, 447 So. 2d 543, 548 (La. App. I Cir. 1984).
[27] *Beatriz Ball, LLC v. Barbagallo*, 2020 W.L. 6938524 at *12 (E.D. La. Nov. 25, 2020) (citing *Who Dat Yat, LLC v. Who Dat?, Inc.*, 2011 WL 39043 at *3 (E.D. La. Jan. 4, 2011)).
[28] *Id.*

party; (3) fault on the part of the publisher; and (4) resulting injury.[29] "Defamatory words are, by definition, words which tend to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person, or otherwise expose a person to contempt or ridicule."[30] Defamatory words fall into two categories: "those that are defamatory *per se* and those that are susceptible of a defamatory meaning."[31] Words that "by their very nature tend to injure one's personal or professional reputation" are considered defamatory *per se*.[32] A plaintiff must establish that the defamatory statements were a "substantial factor" in causing the plaintiff's harm.[33] A defamation plaintiff may recover damages for injury to reputation, personal humiliation, embarrassment, and mental anguish "even when no special damage such as loss of income is claimed."[34]

### III.
### RULING

1.  The record reflects that Ramayo failed to answer the Complaint [ECF No. 1] and that the Clerk's entry of default occurred on July 22, 2020. Ramayo has defaulted and cannot challenge liability. As a result, the well-pleaded allegations of the complaint are taken as true.[35]

2.  Material issues of fact do not exist because of Ramayo's default. As explained below, the well-pleaded allegations in the complaint as well as the evidence submitted in connection with the December 7th evidentiary hearing provide an independent basis in fact for all of the essential elements of the claims asserted by Plaintiffs.

---

[29] *Costello v. Hardy*, 864 So. 2d 129, 139 (La. 2004).
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Wooten v. McDonald Transit Assoc., Inc.*, 788 F.3d 490, 498-500 (5th Cir. 2015)

9

3. Moreover, Ramayo's conduct, including his use of the www.sterling premiumselect.com domain name, continues to damage Plaintiffs' business reputation and brand. Accordingly, Plaintiffs' have been substantially prejudiced by Ramayo's failure to answer and to prosecute this case.

4. There is no evidence in the record suggesting that Ramayo's failure to answer was caused by a good faith mistake or excusable neglect, or that the court would be inclined to set aside the default judgment upon Ramayo's motion.

5. The well-pled allegations of the Complaint establish liability under the ACPA. Specifically, the "Sterling Premium Select" mark is an inherently distinctive mark entitled to protection. It is inherently distinctive because it is capable identifying products or services as coming from Plaintiffs' business. Ramayo's domain name www.sterlingpremiumsleect.com is identical to Plaintiffs' mark. Furthermore, Ramayo registered this domain with the bad faith intent to profit from Plaintiffs' mark. Specifically, Ramayo offered the domain name "www.sterlingpremiumslect.com" for sale for $99,999.00. The record also suggests that Ramayo registered this domain name to harass and harm Plaintiffs in retaliation for his termination.

6. Based on the record, and considering the nature of Ramayo's conduct, the Court concludes that Sterling is entitled to a statutory penalty of **$20,000.00** under the ACPA.

7. The Court also concludes that Ramayo's conduct was willful and malicious. Specifically, his conduct was not only intentional, it was intended to injure Sterling and did, in fact, cause injury. Accordingly, Sterling is entitled to attorney's fees of **$28,954.25**, costs related this case in the amount of **$811.33**, and expert witness fees in the amount of **$4,539.05**.[36]

---

[36] Ottinger Affidavit at ¶ 6.

8. Sterling is also entitled to an order transferring ownership of the "www.sterlingpremiumselect.com" domain name to Sterling pursuant to 15 U.S.C. § 1125(d)(1)(C).

9. The Court will also order Ramayo to provide an accounting of any profits realized from his registration of the "www.sterlingpremiumselect.com" domain name within 30 days of this Memorandum Ruling.

10. The well-pled allegations of the Complaint establish Ramayo's liability under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Specifically, Ramayo's use of the "www.sterlingpremiumselect.com" domain name to injure Sterling's business reputation is likely to cause confusion or mistake, and otherwise deceive customers as to the affiliation of Ramayo or Ramayo's website – and his vulgar title tag --with Sterling.

11. The well-pleaded allegations of the complaint also establish liability under the Louisiana Anti-Dilution Statute, La. R.S. 51:223.1. Specifically, the record reflects that Ramayo's use of the domain name "www.sterlingpremiumselect.com" is likely to injure Sterling's business reputation or otherwise dilute the quality of Sterling's marks or trade names.

12. The well-pleaded allegations in the complaint further establish that Ramayo's actions in registering the "www.sterlingpremiumselect.com" domain name and his use of that domain name and Facebook posts to injure Sterling's business reputation constitute "unfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce." La. R.S. 51:, *et seq.*

13. The well-pleaded allegations in the Complaint establish that Ramayo breached the non-disparagement provisions of the parties' Release and Compromise Agreement. Specifically, after the agreement was executed, Ramayo engaged in a cause of conduct in connection with his

"www.sterlingpremiumselect.com" domain name to injure and disparage Sterling and LeBlanc. Based on the testimony of Dr. Stewart, these actions damaged the business reputation and brand of Sterling and LeBlanc. The record reflects that this non-disparagement clause was a material term of the Release and Compromise Agreement, and that Ramayo's breach of this provision was a material breach of the agreement.

14. The Court concludes that Plaintiffs are entitled to damages of **$48,500.00** based on Ramayo's violation of the Release and Compromise Agreement. This amount reflects the consideration period to Ramayo.

15. The well-pleaded allegations in the complaint established all of the essential elements of a defamation claim under Louisiana law. Specifically, Ramayo's use of "www.sterlingpremiumselect.com" domain name and a vulgar title tag for internet traffic that were directed to Sterling's website was defamatory *per se* with respect to Sterling and LeBlanc. Ramayo's defamatory statements were intentionally published to third parties and injured Sterling's and LeBlanc's reputations. These statements were false and misleading, and Ramayo's conduct was willful and malicious in publishing these defamatory statements.

16. The Court concludes that Sterling and Leblanc are entitled to damages of **$158,546.84** for their Louisiana defamation claims.

17. The well-pleaded allegations of the complaint and the evidence presented during the December 7th hearing establish that Ramayo's conduct with respect to his use of the "www.sterlingpremiumselect.com" domain name resulted in irreparable injury to Sterling and Leblanc, and that money damages are inadequate to fully compensate them for that injury. Considering the balance of harms to Plaintiffs and Ramayo, equity relief in this case is warranted

Case 6:20-cv-00809-RRS-PJH   Document 17   Filed 12/18/20   Page 13 of 13 PageID #: 174

and the public interest would not be undetermined by the entry of a permanent injunction. Moreover, as outlined above, Plaintiffs have established the merits of their claims against Ramayo.

18.  The Court, therefore, concludes that Plaintiffs are entitled to permanent injunctive relief as follows:

   a.  requiring Ramayo to comply with the non-disparagement clause of the January 16, 2020 Release and Compromise Agreement; and

   b.  requiring Ramayo, and all those acting in concert with him, to cease and desist in taking any action to create, obtain, register, or employ a URL or ICANN domain name involving or using Plaintiffs marks, trade names, or the logo or trademark of Sterling Automotive Group, Inc. or any and all variations thereof, including common misspellings.

## IV.
### CONCLUSION

The reasons previously stated, the Court GRANTS Plaintiffs' Motion for Default Judgment. A judgment will be entered contemporaneously herewith.

THUS DONE in Chambers on this 18th day of December, 2020.

_____
ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

13